FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

2009 SEP -4 PM 3:27

| | | |
|---|---|---|
| **NICK POPOVICH** and **SAGE-POPOVICH, INC.**, an Indiana corporation | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. **2 09 C V . 2 7 1** |
| v. | ) ) ) | |
| **MARC WEINGARTEN**, | ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT AT LAW

Plaintiffs **NICK POPOVICH** ("Popovich") and **SAGE-POPOVICH, INC.** ("sage-popovich"), by their undersigned attorneys, for their Complaint At Law against the Defendant, **MARC WEINGARTEN** ("Weingarten"), state as follows:

## NATURE OF THE CASE
## PARTIES

1. Plaintiff sage-popovich, inc. is an Indiana corporation with its principal place of business in Indiana. It is engaged in the business of, among other things, the international recovery and repossession of luxury aircraft, yachts and other high-value objects on behalf of financial institutions and similar creditors. In the United States, sage-popovich uniquely possesses the requisite technical knowledge, experience, capabilities and contacts to perform these highly specialized and sometimes dangerous tasks.

2. Plaintiff, Nick Popovich, is an individual residing in Porter County, Indiana, and the President of sage-popovich, inc. Popovich possesses unique experiences, skills and knowledge with respect to the recovery and repossession of luxury aircraft and yachts.

Consequently, his life story is a highly marketable right and property, currently sought by numerous media outlets.

3. Defendant, Marc Weingarten, is an individual and resident of California.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)(2) in that a substantial part of the events or omissions giving rise to this claim have occurred in this judicial district.

## COMMON ALLEGATIONS

6. In or around November 2008, Weingarten approached Popovich and asked for an interview for the purpose of writing an article about Popovich and his company, sage-popovich (the "Article") for publication in GQ Magazine ("GQ").

7. Weingarten promised Plaintiffs that he would exploit the interview only for the magazine article and not publish Plaintiffs' personal, family and confidential information or its trade secrets. Weingarten, however, did not inform Plaintiffs that he had already entered into an agreement, on or around July 16, 2008, with Paramount Pictures ("Paramount") to sell that studio the information that Weingarten obtained from high-end repossession experts for the production of a feature film.

8. On November 26, 2008, Weingarten travelled to Valparaiso, Indiana and interviewed Popovich and two sage-popovich employees (the "Interviews").

9. In reliance on Weingarten's false representations and his omissions of fact, Plaintiffs reasonably believed that Weingarten would use only certain information and only for the limited purpose of the GQ magazine article. Based upon this understanding, Plaintiffs provided Weingarten with personal and confidential information concerning Popovich's history and experiences, his family, and certain proprietary information of both Popovich and sage-popovich, including, but not limited to, trade secrets and information regarding personnel, clients, techniques, pricing, and other sensitive matters (collectively, the "Confidential Information").

10. Included in the Confidential Information Plaintiffs provided to Weingarten were certain of Plaintiffs' trade secrets, including but not limited to details regarding: the planning and preparation required for each project; locating, boarding and gaining access to guarded multi-engine aircraft; securing, storing and selling recovered and repossessed property; and finding and hiring qualified personnel (the "Trade Secrets").

11. The Interviews and Confidential Information enabled Weingarten to draft an approximately eight thousand-word piece. A substantially shorter version, entitled "The Learjet Repo Man," was published by Salon.com on June 6, 2009.

12. GQ magazine did not publish any article after Plaintiffs refused to sign a general release in favor of GQ's parent company, Condé Nast Publications.

13. On or about June 8, 2009, Weingarten informed Popovich he sold Plaintiffs' story and Confidential Information to Paramount for a feature film. In reality, as Weingarten later admitted to Plaintiffs, he made the original agreement with Paramount well before the Interviews. On information and belief, after Weingarten obtained the Interviews and Confidential Information, he then used Plaintiffs' information and property as leverage to

renegotiate a much more lucrative deal for himself with Paramount. Trade publications soon reported that Paramount had started to develop a feature film based upon Plaintiffs' Interviews and Confidential Information.

14. As a consequence of Weingarten's conduct, Plaintiffs have lost opportunities and had offers rescinded by competing studios, producers, directors and/or agents, who informed Popovich that Weingarten's deal with Paramount impaired or destroyed the marketability and value of Popovich's life story rights and Plaintiffs' Confidential Information.

## COUNT I
## BREACH OF THE AGREEMENT

15. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 14.

16. Due to the sensitive nature of Plaintiffs' business and to protect their valuable personal and property rights, Plaintiffs insisted, and Weingarten orally agreed, in a telephone conversation on November 18, 2008 and thereafter, that, as a condition of Weingarten being granted access, the following nondisclosure terms would govern any interviews he conducted of Popovich and sage-popovich personnel (the "Agreement"):

   a. any information provided to Weingarten by Plaintiffs would be used only for the purposes of the Article to be published in GQ and Weingarten would not use such information for any other purpose without Popovich's express consent;

   b. Weingarten would not disclose the names of any of Plaintiffs' clients, or any identifying information related to any repossession or recovery projects performed by Plaintiffs, including the names of any aircrafts, aircraft owners or third parties, provided to Weingarten by Plaintiffs; and

    c. Weingarten would not disclose any information about Popovich's family, including his children's and then-wife's names, with the exception of his son Zak; provided, however, that any information regarding Zak disclosed by Weingarten would be limited to Zak's role in sage-popovich.

17. Pursuant to and in reliance on the Agreement, Plaintiffs granted Weingarten access and submitted to several interviews and inquiries, and otherwise performed all of their obligations under the Agreement. Throughout this time, Plaintiffs reminded Weingarten that, pursuant to the Agreement, he could not disclose the names or other identifying information of clients, third parties, or aircraft.

18. Weingarten breached the Agreement by disclosing, without consent, certain Confidential Information in the Article, including the names of Popovich's children and his ex-wife, and information regarding Popovich's and sage-popovich's clients and jobs, including the names of aircraft, aircraft owners and third parties. Weingarten further breached the Agreement by selling the rights to the Article and the Confidential Information to Paramount and possibly others without Plaintiffs' consent.

19. As a result of Weingarten's breaches of the Agreement, Plaintiffs were and will be injured by the disclosures, the impaired value in their personal and property rights, and the loss of lucrative media opportunities.

## COUNT II
## FRAUDULENT MISREPRESENTATION

20. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 14.

21. Prior to June 8, 2009, Weingarten was, on information and belief, aware that Plaintiffs were the only persons in the United States with the knowledge and experience to

recover or repossess luxury jets and yachts on an international level. At no time before June 8, 2009, however, did Weingarten inform Popovich that he had agreed with Paramount to sell Paramount information for a feature film on high-end repossession experts such as Plaintiffs.

22. Instead, Weingarten represented to Plaintiffs that he would not use the Confidential Information for any purposes other than a magazine article in GQ.

23. Weingarten further represented to Plaintiffs that he would not disclose certain Confidential Information in the Article, including the names of any of Popovich's or sage-popovich's clients, or any identifying Confidential Information related to any repossession or recovery projects performed by Popovich or sage-popovich; and any Confidential Information about Popovich's family, including his children's and then-wife's names, with the exception of his son Zak; provided, however, that any Confidential Information regarding Zak disclosed by Weingarten would be limited to Zak's role in sage-popovich.

24. Weingarten's promises, representations and omissions were material and, in reliance on Weingarten's promises and representations and omissions concerning the limited object of the Interviews, Plaintiffs placed their trust and confidence in Weingarten and gave him access to their personal and proprietary information, including the Confidential Information.

25. In good faith reliance on Weingarten's representations and promises, Plaintiffs independently negotiated with film and television producers regarding a variety of projects.

26. Weingarten knowingly concealed his agreement with Paramount, and materially misrepresented the purpose of the Interviews and his intentions with respect to his use of the Confidential Information.

27. Plaintiffs reasonably and rightfully relied on Weingarten's misrepresentations to their detriment.

28. Weingarten knew that if he revealed to Plaintiffs that he had an agreement with Paramount and he intended to sell the Confidential Information to Paramount, they would not have agreed to the Interviews or to disclose the Confidential Information to him.

29. As a result of Weingarten's fraudulent acts, Plaintiffs suffered damages in an amount in excess of $75,000.

## COUNT III
## PROMISSORY ESTOPPEL

30. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 14 and 21 through 29.

31. Weingarten promised not to disclose the Confidential Information for any purpose other than the Article.

32. Weingarten further promised that he would not disclose the names of any of Plaintiffs' clients, any identifying Confidential Information related to any repossession or recovery projects performed by Plaintiffs or any Confidential Information about Popovich's family.

33. Weingarten's promises were made with the expectation that Plaintiffs would rely on such promises.

34. Plaintiffs reasonably relied on Weingarten's promises to their detriment.

35. Weingarten failed to honor his promises.

36. Injustice to Plaintiffs can be avoided only by the enforcement of Weingarten's promises, and by enjoining Weingarten from any further use or enjoyment of the Confidential Information.

## COUNT IV
## UNJUST ENRICHMENT

37. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 14 and 21 through 36.

38. Weingarten obtained the Confidential Information from Plaintiffs through unfair and unjust means.

39. Weingarten received an unjust benefit from the Confidential Information when he wrongfully sold the Article and Confidential Information to Paramount and possibly others.

40. The benefit received by Weingarten was to Plaintiffs' detriment, as film and television producers halted negotiations with Plaintiffs or rescinded offers they had made to Plaintiffs after they learned Weingarten had sold the Article and Confidential Information to Paramount.

41. Weingarten's retention of the benefit without payment to Plaintiffs is unjust and Plaintiffs should receive value for their Confidential Information.

## COUNT V
## BREACH OF FIDUCIARY DUTY

42. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 14 and 21 through 41.

43. Plaintiffs placed trust and confidence in Weingarten and entrusted him with the Confidential Information for the limited purpose of writing the Article.

44. In his position of trust, Weingarten exercised influence and superiority over Plaintiffs and improperly influenced Plaintiffs so as to obtain an unconscionable advantage over

them, such that Plaintiffs did not grant interviews or participate in any other publicity at Weingarten's urging.

45.  Weingarten had a fiduciary duty to Plaintiffs not to disclose the Confidential Information for any purpose other than the Article, and then only to the extent authorized by Plaintiffs.

46.  Weingarten sold Plaintiffs' Confidential Information to Paramount and possibly others and/or made improper use of the Confidential Information in violation of his fiduciary duty.

47.  As a result of Weingarten's breach, Plaintiffs were damaged.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

48.  Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 14.

49.  Between November 2008 and July 2009, Popovich negotiated with several parties interested in purchasing the rights to his life story and his and sage-popovich's Confidential Information in order to produce television programs or films.

50.  Popovich informed Weingarten of such negotiations several times prior to the Article's June 6th publication date.

51.  At no time prior to June 8, 2009, did Weingarten inform Popovich or sage-popovich of his agreement and negotiations with Paramount.

52.  Weingarten's wrongful actions in selling the Article and the Confidential Information to Paramount and possibly others and/or making improper use of the rights to the Article and the Confidential Information interfered with Plaintiffs' negotiations and prospective agreements to sell the rights to their stories and Confidential Information.

53. Film and television producers halted negotiations with Plaintiffs and/or rescinded offers they had made to Plaintiffs after they learned Weingarten had sold the Article and Confidential Information to Paramount and possibly others.

## COUNT VII
## UNFAIR COMPETITION

54. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 14.

55. Plaintiffs authorized Weingarten to use the Confidential Information for the limited purpose of writing the Article.

56. Weingarten held out the Confidential Information as his own in his dealings with Paramount and possibly others.

57. Plaintiffs have been unable to sell the rights to the Confidential Information because Weingarten has sold the rights to Paramount and possibly others.

58. As a result, Plaintiffs have been damaged.

## COUNT VIII
## MISAPPROPRIATION OF TRADE SECRETS

59. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 14.

60. The Confidential Information disclosed to Weingarten by Plaintiffs contained Trade Secrets owned by Plaintiffs, pursuant to Ind. Code §24-2-3-2 (2009).

61. Plaintiffs have made reasonable efforts to maintain the secrecy and confidentiality of the Trade Secrets.

62. Weingarten induced Plaintiffs to disclose the Trade Secrets to him through misrepresentations and promises not to disclose them.

63.  Weingarten improperly disclosed the Trade Secrets in the Article. Plaintiffs are informed and believe that Weingarten has disclosed additional as yet unpublished Trade Secrets to Paramount and possibly others without Plaintiffs' consent.

64.  As a result of Weingarten's disclosure of the Trade Secrets, Plaintiffs have been damaged.

## COUNT IX
## CONVERSION

65.  Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 14.

66.  Weingarten misappropriated Plaintiffs' Confidential Information, Trade Secrets, personal and proprietary rights without their consent.

67.  Weingarten sold Plaintiff's Confidential Information and Trade Secrets to Paramount and possibly others.

68.  Weingarten's misappropriation denied Plaintiffs the benefit, enjoyment and use of their Confidential Information, Trade Secrets, personal and proprietary rights.

**WHEREFORE** Plaintiffs, Popovich and sage-popovich, pray that judgment be entered in their favor and against Defendant, Weingarten, as follows:

A.  for an accounting for all benefits, consideration, and profits received directly or indirectly or underlying for any benefits that Defendant has obtained through the use and exploitation of Plaintiffs' rights and property, including, but not limited to, the imposition of a constructive trust;

B.  for restitution and/or disgorgement by Defendant of any benefits that Defendant has obtained through the use and exploitation of Plaintiffs' rights and property, including Defendant's profits;

  C. as an alternative to restitution, compensatory damages in an undetermined amount in excess of $75,000;

  D. for an injunction prohibiting Defendant and all persons in acting in concert with him from exploiting the Plaintiff's Confidential Information, trade secrets, personal and proprietary rights for any book, film or television production without Plaintiffs' consent;

  E. for exemplary damages and a reasonable royalty pursuant to Ind. Code §24-2-3-4;

  F. for such other damages, including punitive damages, attorney's fees and costs, pre- and post-judgment interest and all other relief as the Court may deem just and proper.

        Respectfully submitted,

        **NICK POPOVICH** and **SAGE-POPOVICH, INC.**, an Indiana corporation, Plaintiffs

        By: _____
           One of their attorneys

R. Lawrence Steele, Atty No. 456-45
Izabela Bebekoski, Atty No. 27734-64
**Hodges & Davis, P.C.**
8700 Broadway
Merrillville, IN 46410
Telephone: (219) 641-8700
Facsimile: (219) 641-8710
Attorneys for Plaintiffs
rsteele@hodgesdavis.com
ibebekoski@hodgesdavis.com

Damon E. Dunn, Esq.
Michelle L. Wolf-Boze, Esq.
**Funkhouser Vegosen Liebman & Dunn Ltd.**
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603-5008
Telephone: (312) 701-6800
Facsimile: (312) 701-6801
Attorneys for Plaintiffs
ddunn@fvldlaw.com
mwolf-boze@fvldlaw.com

## JURY DEMAND

Plaintiffs, Nick Popovich and sage-popovich, Inc., demand a trial by jury in all issues triable.

Respectfully submitted,

**NICK POPOVICH** and **SAGE-POPOVICH, INC.**, an Indiana corporation, Plaintiffs

By: _____
One of their attorneys

R. Lawrence Steele, Atty No. 456-45
Izabela Bebekoski, Atty No. 27734-64
**Hodges & Davis, P.C.**
8700 Broadway
Merrillville, IN  46410
Telephone: (219) 641-8700
Facsimile: (219) 641-8710
Attorneys for Plaintiffs
rsteele@hodgesdavis.com
ibebekoski@hodgesdavis.com

Damon E. Dunn, Esq.
Michelle L. Wolf-Boze, Esq.
**Funkhouser Vegosen Liebman & Dunn Ltd.**
55 West Monroe Street, Suite 2300
Chicago, Illinois 60603-5008
Telephone: (312) 701-6800
Facsimile: (312) 701-6801
Attorneys for Plaintiffs
ddunn@fvldlaw.com
mwolf-boze@fvldlaw.com

63953:2