UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

```
NICK POPOVICH, SAGE-POPOVICH,  )
INC.,                          )
                               )
          Plaintiffs           )
                               )
     v.                        )
                               )
MARC WEINGARTEN,               )
                               )
          Defendant            )
*******************************)   Case No. 2:09 cv 271
MARC WEINGARTEN,               )
                               )
     Counter Claimant          )
                               )
     v.                        )
                               )
NICK POPOVICH, SAGE-POPOVICH,  )
INC.,                          )
                               )
     Counter Defendants        )
```

## OPINION AND ORDER

This matter is before the court on the Motion to Transfer Venue [DE 46] filed by the defendant, Marc Weingarten, on May 28, 2010. For the following reasons, the motion is DENIED.

### Background

The defendant/counter-claimant, Marc Weingarten, began to write an article about the world of high-end repossession men in early 2008. As part of his research, he contacted the plaintiff, Nick Popovich, who runs a high-end repossession business in Valparaiso, Indiana. Weingarten traveled to Valparaiso where he

entered into a contract and conducted an interview with Popovich and his employees. Popovich claims that he told Weingarten personal and confidential information, including trade secrets and information regarding personnel, clients, techniques, pricing, and other sensitive matters, based upon false representations Weingarten made concerning the disclosure of the confidential information. Weingarten's article was published in June 2009 on Salon.com, and that same month Weingarten negotiated a deal with Paramount to sell movie rights to his article. The contract for the sale of movie rights was negotiated and entered into in Los Angeles, California.

Popovich filed this lawsuit against Weingarten in the Northern District of Indiana alleging breach of contract, fraudulent misrepresentation, promissory estoppel, unjust enrichment, breach of fiduciary duty, misappropriation, tortious interference with business relationships, unfair competition, and conversion. It is Popovich's position that Weingarten disclosed the confidential information he provided in breach of their agreement, and sold Popovich's life story. Weingarten filed a counterclaim for defamation, tortious interference with prospective economic advantage, and unjust enrichment, arguing that Popovich made false derogatory statements about him to Hollywood production companies. Weingarten's unjust enrichment claim subsequently was

withdrawn. Weingarten now requests that this case be transferred to the Central District of California, citing the convenience of the witnesses, availability of evidence, and interests of justice as his reasons.

## Discussion

A party seeking to transfer venue pursuant to 28 U.S.C. §1404(a) must show that "(1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." Vandeveld v. Christoph, 877 F.Supp. 1160, 1167 (N.D. Ill. 1995); Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc., 200 F.Supp.2d 941, 946 (N.D. Ill. 2002)(stating that the "moving party bears the burden of establishing that the transferee court is the more convenient forum"). The court considers public and private interests when assessing a motion to transfer venue. Generally, in considering the private interests, the court looks to "(1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses." First National Bank v. El Camino Resources, Ltd., 447 F.Supp.2d 902, 912 (N.D. Ill. 2006). See also DePuy Orthopaedics, Inc. v. Gault South Bay, Inc., 2007 WL

3407662, *8 (N.D. Ind. Nov. 13, 2007). The public interests that are relevant to an analysis under §1404(a) include the court's familiarity with applicable law, the efficiency with which the court may resolve the matter, and the desirability of resolving disputes in the region in which they arose. First National Bank, 447 F.Supp.2d at 912; Travel Supreme, Inc. v. Nver Enterprises, Inc., 2007 WL 2962641, *10 (N.D. Ind. Oct. 5, 2007). It is within the court's discretion to weigh these factors. Allied Van Lines, 200 F.Supp.2d at 946. The court considers these factors in a "flexible and individualized analysis." Stewart Organization, Inc. v. Ricon Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988). However, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." In re National Presto Industries, 347 F.3d 662, 664 (7th Cir. 2003).

The parties do not dispute that venue is proper in this court. Nor do they dispute that the defendant resides in Los Angeles County, California, rendering the Central District of California a proper venue pursuant to 28 U.S.C. §1391(a)(1). The focus of the dispute concerns which district is proper in light of the locations of the parties and witnesses, the availability of evidence, and the interests of justice.

Weingarten's strongest argument is that the venue should be transferred for the convenience of the witnesses. He claims that 40 witnesses reside in California and that only five are present in Indiana, three of which are Popovich and his employees, who could be called to testify in California. Weingarten's initial disclosures listed ten witnesses in California, and Popovich's listed one. Additionally, Popovich's talent agent is located in California. Weingarten argues that because the majority of the Indiana witnesses could be called to testify in California, and the same is not true with regards to the California witnesses, venue should be transferred. However, at least three other witnesses on Popovich's initial disclosures are located in the Chicago area, near the Northern District of Indiana.

In his supporting brief and affidavit, Weingarten referenced 40 California witnesses, but he failed to identify them or the subject of their proposed testimony. Despite this deficiency, it is clear that Weingarten would need to call some California witnesses because the facts giving rise to Popovich's claims for misappropriation, tortious interference with business relation-ships, and unfair competition are based upon events that occurred in California: Weingarten allegedly selling Popovich's life story to Paramount. Additionally, Weingarten's counterclaims concern statements Popovich allegedly made to Hollywood production

companies in California.  Although it is clear that some California witnesses are necessary, Weingarten, who carries the burden of proof, has failed to show who his witnesses are and why their testimony is important, making it difficult for the court to assess the relative convenience to the witnesses.  See Rose v. Franchetti, 713 F.Supp. 1203, 1214 (N.D. Ill. 1989)("Without the defendant's assistance in elucidating who his witnesses are, and why they are important, this factor weighs, if at all, only marginally in the defendant's favor.").  Given that several witnesses are located in Indiana and the Chicago area and that Weingarten has failed to show how many key witnesses are necessary from California, if this prong weighs in favor of Weingarten, it is only slightly.

Weingarten similarly argues that the venue must be transferred because the availability of evidence is greater in California.  Weingarten restated that a majority of the witnesses are located in California, as well as their documents.  Again, Weingarten has not identified the relevant documents that he argues are present in California or why that information would not be accessible in the Northern District of Indiana.  Because Weingarten bears the burden of proof, the court does not find that this prong weighs in his favor.

Although Weingarten will be inconvenienced by litigating in the Northern District of Indiana, he has failed to show how balancing the inconvenience to both parties warrants transferring the case to the Central District of California. Therefore, this factor is neutral. See Rose, 713 F.Supp. at 1214 (finding that this factor is neutral where the moving party fails to show evidence suggesting that the plaintiff would be less inconvenienced at the transferred venue). Under the next prong, the court considers where the material events giving rise to the claim occurred. Weingarten first contacted, interviewed, and formed a contract with Popovich in Valparaiso, Indiana. However, the meetings and contracts surrounding the misappropriation, tortious interference with business relationships, and unfair competition claims are based upon events that occurred in California. Additionally, Weingarten's counterclaims concern statements Popovich allegedly made to production companies in California. Therefore, material events occurred in both jurisdictions.

Finally, the court must consider the interests of justice, a broad category relating to the "efficient functioning of the courts, not to the merits of the underlying dispute." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir. 1986). The court considers the congestion of the court dockets, the local

interests, and the familiarity with governing law.  First National Bank, 447 F.Supp.2d at 912.

Weingarten begins by pointing to the disparity in the average time to resolve a case between the Central District of California and the Northern District of Indiana.  He refers to statistical data showing that, on average, cases are resolved in the Central District of California in 22 months and it takes approximately 29 months for the average case to be resolved in the Northern District of Indiana.  This is not a large disparity and can be affected by a number of factors, including delays initiated by the parties.  Because there is some disparity, this factor may weigh in favor of Weingarten.

Next, Weingarten is correct that there is a local interest in resolving disputes over the motion picture and television industry in California.  See Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1202 (9th Cir. 1988).  The suit generally turns on whether Weingarten sold Popovich's story to a movie producer in California.  This is the type of suit that California would have an interest in deciding.  However, Popovich is an Indiana resident who allegedly suffered harm in Indiana from a breach of contract formed in Indiana, giving Indiana an interest in the law suit as well.  Because this suit concerns the sale of Popovich's life story to a Hollywood producer, and these actions are the

basis of Popovich's claims including his breach of contract claim, this factor weighs in favor of Weingarten for transferring venue.

The final prong to be considered is the court's familiarity with the applicable law. When a federal district court sits in diversity, it must determine the applicable substantive law based on the choice of law rules of its forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Storie v. Randy's Auto Sales, LLC, 589 F.3d 873, 879 (7th Cir. 2009). When a case is transferred under §1404, the original forum state's choice of law principles continue to apply. Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The present case presents both tort and contract claims.

Generally, Indiana's choice of law rule for torts is lex loci delicti commissi: the law of the place where the tort was committed is applied. Hubbard Mfg. Co. v. Greeson, 515 N.E.2d 1071, 1073 (Ind. 1987). Under this rule, the law of the place where the "last event necessary to make an actor liable for the alleged wrong" will be applied. Id. at 1073. However, this rule is not automatically applied when an "anomalous" result would be reached, such as where the place of the tort bears little rela-tionship to the legal action. Id. In this case, these addi-

tional factors are considered:

>    1.  The place where the conduct causing the injury occurred;
>
>    2.  The residence or place of business of the parties; and
>
>    3.  The place where the relationship is centered.
>
>    Id. at 1073-74 (citing Restatement (Second) of Conflicts of Laws §145(2) (1971))

By adding these factors when the place of the tort is insignificant to the action, Indiana has modified the traditional rule. In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation, 155 F.Supp.2d 1069, 1078-79 (S.D. Ind. 2001).

Here, it would not be anomalous to apply California law to the tort disputes. Many of the events alleged in the Complaint occurred in California, namely Weingarten allegedly selling Popovich's story and interfering with Popovich's ability to obtain his own contract with a production company. Therefore, the traditional rule would be applied, and the law of the state where the last event occurred would govern the claims. Hubbard, 515 N.E.2d at 1073. Weingarten's actions that would render him liable under the tort claims all occurred in California. It was in California that Weingarten allegedly sold Popovich's story, which was the last event necessary to give rise to the tortious interference with business relationships, unfair competition,

misappropriation of trade secrets, and conversion claims. For this reason, California law would govern the tort claims.

With regard to the contract claim, the traditional rule provided that the substantive law of the place where the breach took place governed the lawsuit. Hubbard, 515 N.E.2d at 1073. The Indiana Supreme Court modified this rule and now applies the most significant relationship test. W.H. Barber Co. v. Highes, 63 N.E.2d 417, 423 (Ind. 1945); Hubbard, 515 N.E.2d at 1073. "The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact." W.H. Barber, 63 N.E.2d at 423; Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 581 (7th Cir. 1994). Among the acts considered are: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter; and (5) the residence, place of business, or place of incorporation of the parties." Nucor Corp., 28 F.3d at 582 (citing Restatement §188, at 575). This modified rule grants the court greater flexibility when the state where the breach occurred has a limited relationship with the claim. Hubbard, 515 N.E.2d at 1073.

Weingarten came to Indiana where he negotiated with Popovich and entered into the contract. Popovich fulfilled his end of the contract in Indiana by supplying Weingarten with the information he requested. The subject matter of the contract dealt with activities that would occur in Indiana and California, specifically, the selling of Popovich's story, and the alleged breach occurred in California. Additionally, Popovich is from Indiana and Weingarten is from California, rendering the fifth prong neutral. Most of the events giving rise to the contract occurred in Indiana, so that Indiana law likely would govern the contract dispute. Although the Central District of California would have greater familiarity with the law applicable to the tort claims, the Northern District of Indiana has greater familiarity with the law governing the contract claims, rendering this prong of the change of venue analysis neutral.

Overall, the majority of the factors are neutral or weigh in favor of Popovich. Weingarten did not adequately represent who his California witnesses would be and their importance to the law suit. Although some of the public factors are weighed in favor of Weingarten, this is not significant enough to disturb the plaintiff's choice of forum. See In re National Presto Industries, 347 F.3d at 664 (stating that the plaintiff's choice of forum should rarely be disturbed). Based on the foregoing,

Weingarten failed to meet his burden in establishing that the Central District of California is the preferred venue, and his motion to transfer venue is DENIED.

ENTERED this 25th day of October, 2010

s/ Andrew P. Rodovich
United States Magistrate Judge