UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| NICK POPOVICH and SAGE-POPOVICH, INC., an Indiana corporation, | ) ) ) | |
| Plaintiffs / Counterdefendants, | ) ) | |
| v. | ) ) ) | No. 2:09 CV 271 |
| MARK WEINGARTEN, | ) ) | |
| Defendant / Counterclaimant. | ) | |

## OPINION and ORDER

This matter is before the court on the motion of plaintiffs/counterdefendants Nick Popovich and Sage-Popovich, Inc. (collectively "Popovich"), to dismiss defendant/counterclaimant Mark Weingarten's claims for defamation and interference with prospective business advantage pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). (DE # 35.) For the reasons that follow, the motion is denied.

## I. BACKGROUND [1]

Mark Weingarten is a freelance journalist living and working in California. Weingarten decided to write a story about high-end repossessors, whose job it is to take possession of luxury items such as jets, boats, and supertankers on behalf of creditors

---

[1] For purposes of deciding Popovich's RULE 12(b)(6) motion, the court accepts Weingarten's version of the events as true. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Weingarten has moved the court to take judicial notice of certain evidence related to his countersuit, with virtually no legal support for his request. (DE # 38.) However, reference to the evidence submitted is not necessary to decide this motion to dismiss, so the court denies Weingarten's motion as moot.

when debtors default on financing agreements. Weingarten sold the concept of the story, which he entitled "License to Steal," to GQ Magazine in September 2008.

In November 2008, Weingarten contacted Nick Popovich, a high-end "repo man" who runs a repossession company called Sage-Popovich out of Valparaiso, Indiana, for an interview for the story. Popovich agreed, so Weingarten went to Valparaiso and taperecorded two interviews with Popovich. According to Weingarten, the interviews were given freely and without restrictions, were expressly intended to provide information for the "License to Steal" story, and were to be used by Weingarten at his discretion.

Weingarten disagreed with GQ's proposed edits to the article and exercised his contractual rights to "kill" the story, despite GQ's objections. Popovich was informed of this event. Weingarten received another opportunity to publish the story through Salon.com, and according to Weingarten, Popovich was pleased to learn of this. Salon.com unilaterally edited Weingarten's story without consulting Weingarten. The result was an article that focused substantially on Popovich, re-named "Lear Jet Repo Man." Popovich requested that Salon.com change a reference to his "wife" in the article to "ex-wife," and Salon.com did so, but Popovich did not request any other changes or take issue with the rest of the article. After the story was published by Salon.com, Popovich sent Weingarten a congratulatory note.

Weingarten sold his story to Paramount Pictures, which was working on a fictional account of repossessions loosely based on the "License to Steal" story. Once

2

Popovich learned that Weingarten was being contacted by potential buyers for the story, his demeanor towards Weingarten changed. According to Weingarten, Popovich told numerous members of the movie and television community in Los Angeles that Weingarten's Salon.com article published Popovich's confidential information and trade secrets.

On September 4, 2009, Popovich filed suit in this court against Weingarten for breach of the interview agreement, fraudulent misrepresentation, promissory estoppel, unjust enrichment, breach of fiduciary duty, tortious interference with business relations, unfair competition, misappropriation of trade secrets, and conversion. (DE ## 1, with amendments at # 10.) Weingarten filed a countersuit, alleging defamation, interference with prospective business advantage, and unfair competition. (DE # 18, with amendments at # 20.) Popovich moved to dismiss Weingarten's countersuit (DE # 23), and Weingarten subsequently amended his suit, eliminating his claim for unjust enrichment (DE # 34). Popovich has again moved to dismiss Weingarten's countersuit, waging essentially the same attack on the two remaining claims (DE # 35). The court addresses the latter motion to dismiss below.[2]

---

[2] Popovich's previous motion to dismiss, appearing on the docket at DE # 23, which attacks a claim Weingarten has since withdrawn and which otherwise presents essentially the same arguments made in Popovich's motion to dismiss at DE # 35, is denied as moot.

## II. LEGAL STANDARD

Popovich has moved to dismiss Weingarten's countersuit under RULE 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE for failure to state a claim upon which which relief may be granted. RULE 8 of the FEDERAL RULES OF CIVIL PROCEDURE sets forth the pleading standard for claims filed in federal court; specifically, that rule requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. "The Rule reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (internal quotation marks omitted). For decades courts had determined the sufficiency of complaints under RULE 8 by employing the oft-cited test of *Conley v. Gibson*, in which the Supreme Court stated that a complaint satisfies RULE 8 "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957).

However, the Court changed the landscape of pleading standards in *Bell Atlantic Corp. v. Twombly,* holding that while "we do not require heightened fact pleading of specifics," a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" to the level of "plausible." 550 U.S. 544, 555, 570 (2007). In other words, the complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Id.* at 556. However, the Court clarified that it was not imposing a probability requirement on

4

plaintiffs, because "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely," so long as the plaintiff has "nudged their claims across the line from conceivable to plausible." *Id.* at 556, 570. The Court reiterated the plausibility standard in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

In a recent opinion on this subject, the Seventh Circuit embraced a narrow reading of the plausibility standard set forth in *Twombly* and *Iqbal,* cautioning that "'[p]lausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). "[T]he [Supreme] Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* at 404 (emphasis in original).

### III. DISCUSSION

#### A. Choice of Law

The parties dispute whether Indiana or California tort law governs Weingarten's counterclaims. "When a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009). Because this court sits in

5

Indiana, the court will employ Indiana's choice-of-law rules to determine which state's laws govern Weingarten's tort claims.

In tort cases, Indiana's choice-of-law analysis is a multiple-step inquiry. *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). "As a preliminary matter, the court must determine whether the differences between the laws of the states are "important enough to affect the outcome of the litigation." *Id.* (internal quotation marks omitted). In this case, there is a significant difference between California and Indiana law with regard to whether defamatory conduct can serve as the underlying conduct necessary to support an interference with prospective economic advantage claim. *Compare Levee v. Beeching,* 729 N.E.2d 215, 222-23 (Ind. Ct. App. 2000) (defamation cannot serve as underlying conduct of interference claim); *with Savage v. Pac. Gas & Elec. Co.,* 21 Cal. App. 4th 434, 449-50 (1st Dist. 1993) (defamation may serve as underlying conduct of interference claim). Because Weingarten relies on defamatory conduct to serve as the basis for his interference claim, the difference between California and Indiana law on this point is important enough to affect the outcome of the litigation.

Given that there exists an important conflict between the laws of the states, Indiana's choice-of-law rules mandate a presumption that the rule of *lex loci delicti* (the place of the wrong) applies. *Simon,* 805 N.E.2d at 805. "Under this rule, the court applies the substantive laws of the 'the state where the last event necessary to make an actor liable for the alleged wrong takes place.'" *Id.* (quoting *Hubbard Mfg. Co. v. Greeson,* 515 N.E.2d 1071, 1073 (Ind. 1987)). Weingarten essentially argues that the last event

6

necessary to make Popovich liable for defamation and interference with economic advantage is a person in California receiving Popovich's allegedly defamatory communication about Weingarten, making California the *lex loci delicti*. The court agrees. Alternatively, to the extent that the torts alleged by Weingarten require a showing of injury, any injury allegedly experienced by Weingarten necessarily occurred in California, as that is where Weingarten lives and works. *Consolidated Rail Corp. v. Allied Corp.,* 882 F.2d 254, 256 (7th Cir. 1989) (noting that under Indiana's choice-of-law rules, the place of injury often determines the *lex loci delicti*).

The *lex loci delicti* presumption applies "in all but exceptional cases," *In re Bridgestone/Firestone Tires Prods. Liab. Litig.,* 288 F.3d 1012, 1016 (7th Cir. 2002), but the presumption is not conclusive and may be overcome if the court is persuaded that "the place of the tort 'bears little connection' to this legal action." *Simon,* 805 N.E.2d at 805 (quoting *Hubbard,* 515 N.E.2d at 1074). Thus, the laws of California will apply to Weingarten's counterclaims unless Popovich can persuade the court that California is "insignificant" to this action. *Id.* No such showing has been made. Rather, the court finds that California plays a considerable role in the counterclaims. Weingarten of course lives and works in California, and the injurious impacts of the alleged wrongful conduct occurred there. Further, Weingarten alleges that Popovich's defamatory statements were directed to members of Los Angeles's television and movie community in order to interfere with Weingarten's relationship with a member of that community. Because California is the *lex loci delicti* for Weingarten's counterclaims and Popovich has

7

not persuaded the court that California's connection to this action is insignificant, the court's choice-of-law analysis stops here.[3] California law governs Weingarten's counterclaims.[4]

### B. The First Amendment

Popovich argues that the statements allegedly made by him about Weingarten are opinions protected by the First Amendment of the United States Constitution and therefore cannot constitute defamation as a matter of law. In *Milkovich v. Lorain Journal Company*, the United States Supreme Court addressed the constitutional limits of state defamation laws. 497 U.S. 1 (1990). The Court stated that, under the First Amendment, a state's defamation laws may only prohibit statements that can reasonably be interpreted as stating actual facts about an individual, that is, statements that are "sufficiently factual to be susceptible of being proved true or false." *Id.* at 20, 22. The Court held that while calling someone a "liar" would constitute an actionable defamatory act, commenting on someone's "abysmal ignorance" would constitute protected opinion. *Id.*

---

[3] If the court had determined that the *lex loci delicti* was insignificant to the action, the court would have gone on to consider other factors, such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered. *Simon,* 805 N.E.2d at 805. However, the court does not reach this inquiry because Popovich failed to demonstrate that California, the *lex loci delicti,* is insignificant to this action.

[4] Magistrate Judge Rodovich, in his order denying Weingarten's motion to transfer venue (DE # 56), came to the same conclusion when he applied Indiana's choice-of-law rules to find that California law should apply to Popovich's tort claims against Weingarten. He also found that Indiana law would apply to Popovich's contract claims.

at 20. According to the Court, the former could be proven false, while the latter could not. *Id.* at 19-20.

The Seventh Circuit Court of Appeals echoed this logic in *Sullivan v. Conway* by explaining the difference between calling someone a "poor lawyer" and stating that a lawyer should be disbarred:

> It is one thing to say that a lawyer is dishonest, or has falsified his credentials, or has lost every case he has tried, or can never file suit within the statute of limitations. These are all readily verifiable statements of fact. But to say that he is a very poor lawyer is to express an opinion that is so difficult to verify or refute that it cannot feasibly be made a subject of inquiry by a jury. . . . If Conway had said that Sullivan had been or should be disbarred, this would be actionable (if false) because it would imply that Conway knew things about Sullivan that could be shown to be either true or false, since the grounds for disbarment are factual and not mere matters of subjective opinion or surmise.

157 F.3d 1092, 1097 (7th Cir. 1998). The Seventh Circuit later elaborated that the legal test for determining whether a statement is a protected opinion is whether or not the statement implies "*objectively verifiable or testable* facts." *Pope v. Chronicle Pub. Co.*, 95 F.3d 607, 614 (7th Cir. 1996) (emphasis added).

Popovich's alleged statement that Weingarten published confidential information and trade secrets belonging to Popovich is an objectively verifiable statement of fact. Weingarten's publications can be scrutinized and their contents can be examined to determine the presence of confidential information and/or trade secrets contained therein. In this way, the truth or falsity of Popovich's alleged statement about

9

Weingarten can be verified. Such a statement is not subject to First Amendment protection.

    C.    **California's "Litigation Privilege"**

Popovich also argues that the statements he allegedly made about Weingarten are protected by California's "litigation privilege," codified at CALIFORNIA CIVIL CODE section 47, subdivision (b). This statute provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged and cannot be punished by way of a civil suit. *Action Apartment Ass'n, Inc. v. City of Santa Monica,* 163 P.3d 89, 95 (Cal. 2007). The California Supreme Court has devised a four-element test to determine when the privilege applies; under that test, the privilege applies to a communication: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action. *Id.* (citing *Silberg v. Anderson,* 786 P.2d 365, 369 (Cal. 1990)). The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto. *Id.*

Popovich essentially argues that any statements he allegedly made to third parties about Weingarten were statements made about his legal dispute with Weingarten and are therefore subject to the protections of the litigation privilege. The court will assume, without deciding, that the first element of the four-element test is met because Popovich allegedly made the statements about Weingarten relatively close in temporal proximity to the present litigation. Popovich is obviously a party to this

litigation, satisfying the second element. However, Popovich makes no attempt to argue that he made any allegedly defamatory statements to members of the Los Angeles television and movie community about Weingarten in order to achieve the objects of the litigation between himself and Weingarten, nor does he argue that any such statements had any logical relation to this action. In any event, the court would not find such arguments tenable. Thus, Popovich cannot establish the third or fourth elements of the California Supreme Court's test.

Further, the purposes of the litigation privilege would not be served by applying it to Popovich's alleged statements. "[A]pplication of the litigation privilege must satisfy the ultimate justification for the privilege, by encouraging the free exercise of the parties' fundamental right of resort to the courts for assistance in the ascertainment of truth and the resolution of their disputes." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1380 (1st Dist. 1999). Popovich's precise motivations for allegedly making defamatory statements about Weingarten are unknown. For the time being, it is sufficient to say that the court is unable to infer that the statements, if in fact made, were uttered by Popovich as part of an attempt to exercise a fundamental right of resort to the courts. *Compare id.* (newspaper's publication of retraction was not afforded litigation privilege; retraction was not published to obtain access to courts and protecting retraction would not promote purposes of privilege); *with Olsen v. Harbison,* 119 Cal. Rptr. 3d 460, 469 (3d Dist. 2010) (conversation was part of plaintiff's efforts to bring in experienced counsel to assist on the case and thus subject to the litigation privilege).

11

**D.     Sufficiency of Pleadings Under Rule 8**

Having rejected Popovich's arguments that his alleged statements were protected as a matter of law, the court now turns to the heart of this motion to dismiss: Popovich's argument that Weingarten has failed to plead facts sufficient to state a claim for defamation or interference with prospective economic advantage. Popovich attempts to support his attack on Weingarten's counterclaims with numerous citations to opinions issued by state courts regarding pleading standards, especially those applicable to defamation claims. However, under *Erie R.R. v. Tompkins*, a federal court hearing state claims must apply federal procedural law. 304 U.S. 64 (1938). Therefore, though California law provides the substantive law governing Weingarten's counterclaims, FEDERAL RULE OF CIVIL PROCEDURE 8, not the particular pleading rules of any state, governs the standard of specificity required of Weingarten's countersuit. *Muzikowski v. Paramount Pictures Corp.,* 322 F.3d 918, 926 (7th Cir. 2003) (holding that RULE 8, not Illinois pleading rules for defamation, applied to Illinois defamation claim filed in federal court).

*1.     Defamation*

Popovich first argues that Weingarten has failed to sufficiently allege a claim for defamation. The elements of such a claim under California law are: (1) the existence of a publication; that is (2) false; (3) defamatory; (4) unprivileged; and that (5) has a natural tendency to injure or that causes special damage. *Taus v. Loftus,* 151 P.3d 1185, 1209 (Cal. 2007). As to the third element, publications which tend to injure a person with respect to

his occupation or profession are defamatory in nature. CAL. CIV. CODE § 45 (libel) & § 46 (slander).

Popovich argues that Weingarten has failed to identify the precise allegedly defamatory statement made by Popovich and the identities of each individual to whom Popovich allegedly made statements.[5] However, Popovich cites no federal pleading standard, and the court cannot locate one, that requires Weingarten to do so. Rather, Weingarten's obligations under RULE 8, as explained in detail above, can be boiled down to the following: (1) Weingarten must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis, *Bridges v. Gilbert,* 557 F.3d 541, 545 (7th Cir. 2009); and (2) Weingarten must set forth facts sufficient to raise his right to relief above the speculative level to the level of plausible. *Twombly,* 550 U.S. at 555.

Weingarten has met his first obligation. Weingarten alleges that after he made a deal with Paramount Pictures to develop his "License to Steal" story, Popovich told numerous members of the movie and television community in Los Angeles that Weingarten published confidential and trade secret information belonging to Popovich.

---

[5] Popovich also argues that Weingarten has failed to plead actual malice. Popovich's attempt to support this argument is based on Indiana law, which the court has already held does not apply to Weingarten's counterclaims. In any event, it is unclear why Popovich is making any arguments about "actual malice" at all. As the cases Popovich himself cites make clear, that standard applies in cases involving public officials and public figures, *Curtis Pub. Co. v Butts,* 388 U.S. 130, 155 (1967), or, if Indiana law were to apply, matters of public concern. *Journal-Gazette Co., Inc. v. Bandido's, Inc.,* 712 N.E.2d 446, 452 (Ind. 1999). These circumstances are not implicated in this case.

These facts, if true, would establish the elements of a defamation claim; according to Weingarten's version of the events, Popovich's alleged statements were not true, were made without privilege. Further, Popovich's alleged statements implying that Weingarten abused his occupation as a journalist by using information obtained under the guise of research for improper personal financial gain were defamatory in the sense that they tended to injure Weingarten in his profession, and had a natural tendency to do so. *Taus*, 151 P.3d at 1209; *Wong v. Tai Jing,* 117 Cal. Rptr. 3d 747, 763 (6th Dist. 2010) (parent's remarks that dentist deserved zero rating and should be avoided "like a disease" and that parent was "really, really angry" that a treatment contained mercury were defamatory because they implied that dentist failed to properly warn and advise parent, which could injure dentist's professional career). Weingarten's allegations also provide Popovich with a general time frame and notify Popovich of the subject matter of the alleged defamatory statements. Thus, Weingarten's defamation allegations constitute a short and plain statement sufficient to provide Popovich with "fair notice" of the defamation claim.

  Weingarten has also fulfilled his second obligation, raising his right to relief above the speculative level to the level of plausible. Weingarten has not simply stated that Popovich defamed him or merely recited the elements of the claim, neither of which would meet RULE 8's demands. *Bissessur v. Ind. Univ. Bd. of Trustees,* 581 F.3d 599, 603 (7th Cir. 2009) (given *Twombly*, "[a] plaintiff may not escape dismissal on a contract claim, for example, by stating that he had a contract with the defendant, gave the

14

defendant consideration, and the defendant breached the contract."). Nor has Weingarten presented so fantastic a story that it could be easily debunked by a non-illicit "obvious alternative explanation." *Twombly*, 550 U.S. at 567 (plausibility standard not satisfied where alleged parallel conduct by telecommunications companies was easily explained by fact that each company was simply "sitting tight, expecting their neighbors to do the same thing"); *Iqbal*, 129 S. Ct. 1937. Rather, Weingarten's allegations provide a sufficient factual underpinning for his claim and contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting his allegations. *Twombly*, 550 U.S at 556. This is all that is required at this stage.

2. *Interference with Prospective Economic Advantage*

Popovich also argues that Weingarten has failed to sufficiently plead a claim of intentional interference with prospective economic advantage. The elements of that tort under California law are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Plummer v. Day/Eisenberg, LLP,* 184 Cal. App. 4th 38, 51 (4th Dist. 2010). The defendant's intentional act must be wrongful by some measure other than the fact of the interference itself. *Park 100 Inv. Group II v. Ryan,* 180 Cal. App. 4th 795, 813 (2d Dist. 2009) (holding that filing of lis pendens was legal act and therefore could not serve as

basis for interference with prospective economic advantage claim). As previously noted, defamatory statements can constitute wrongful acts sufficient to serve as a basis for an interference claim under California law. *Savage,* 21 Cal. App. 4th at 449-50.

Popovich's argument that the interference claim should fail rests almost entirely on his assertion that Weingarten's defamation claim should fail: in other words, if Popovich did not defame Weingarten, then Popovich performed no intentional, wrongful act necessary to support an interference claim. However, as explained above, Weingarten's defamation claim survives Popovich's motion to dismiss. Accordingly, the court rejects Popovich's argument.

A brief review of Weingarten's allegations in support of his interference claim reveals that they pass muster under RULE 8. The counterclaim alleges, sufficient to put Popovich on notice, that Weingarten had an economic relationship with Paramount in the form of a developing agreement to turn Weingarten's research into a fictional account, that Popovich knew of the relationship, that Popovich intentionally made statements to members of the Los Angeles movie and television community that Weingarten was violating the law in an effort to disrupt Weingarten's relationship with Paramount, and that Weingarten was required to correct false information and suffered economic harm as a result of Popovich's actions. Weingarten's allegations "present a story that holds together" and describe events that "could . . . have happened." *Swanson,* 614 F.3d at 404. In other words, Weingarten's allegations are not implausible. Whether events actually transpired the way Weingarten claims is another question for

another day. For purposes of this analysis on Popovich's RULE 12(b)(6) motion, Weingarten's interference claim is sufficient to meet the requirements of RULE 8.

IV. **CONCLUSION**

For the foregoing reasons, Popovich's motion to dismiss (DE # 35) is **DENIED**. Popovich's previous motion to dismiss (DE # 23), which attacks a claim Weingarten has since withdrawn and which otherwise presents essentially the same arguments made in Popovich's motion to dismiss at DE # 35, is **DENIED** as moot. Weingarten's request for judicial notice (DE # 38) is also **DENIED** as moot.

**SO ORDERED.**

Date: March 14, 2011

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT